IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **BRADY KEITH**, ) | |
| Individually and on behalf of a class, ) | Case No. 8:11-CV-00135 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **FIRST AMENDED COMPLAINT** |
| ) | **– CLASS ACTION** |
| **BACK YARD BURGERS** ) | |
| **OF NEBRASKA, INC.; BACKYARD** ) | |
| **BURGERS, INC.** ) | |
| and **DOES 1-10**, ) | |
| ) | |
| Defendants. ) | |

## INTRODUCTION

1. Plaintiff, Brady Keith ("Plaintiff"), individually and on behalf of a class defined herein bring this action against Back Yard Burgers of Nebraska, Inc. ("BYBN") and Back Yard Burgers, Inc. ("BYBI", or collectively with BYBN "BYB") to secure redress for a violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2. One provision of FACTA, codified at 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3. Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." *Pirian v. In-N-Out Burgers,* 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007); accord, *Iosello v. Leiblys, Inc.*, 502 F.Supp. 2d 782 (N.D.Ill. 2007); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 07 C 2934, 2007 U.S. Dist. LEXIS 77440 (N.D.Ill., Oct. 17, 2007); *Follman v. Village Squire, Inc.* 07 C 3767, 2007 U.S. Dist. LEXIS

92585 (N.D.Ill., Dec. 18, 2007); *Korman v. Walking Co.,* 503 F. Supp. 2d 755 (E.D. Pa. 2007); *Ramirez v. MGM Mirage, Inc.*, 2:07-CV-00326-PMP-PAL, 2007 U.S. Dist. LEXIS 95254 (D. Nev. Dec. 3, 2007).

4.    The purpose of this "truncation requirement" is to prevent identify theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

5.    One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

6.    The expiration date generally is necessary for misuse of the card number.

7.    Merchants generally will not honor a credit card in a card-not-present transaction (telephone, internet or fax) without both the correct expiration date and the card number. Thieves prefer to engage in such transactions to commit credit card fraud, so as to reduce the chances of apprehension.

8.    To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

9.    Congress gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

10. BYB has willfully violated FACTA and failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement.

11. On June 3, 2008, Congress retroactively removed liability for willful expiration date violations through that date.  This amendment was widely publicized and sponsored by the Chamber of Commerce and other retailer organizations.

12. Plaintiff brings this action against BYB based on BYB's violations of 15 U.S.C. §§ 1681 *et seq.* and seeks statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper, including punitive damages.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p ("FCRA").

14. Venue is proper because BYBN's principal place of business is located in this District and the conduct at issue in this lawsuit took place in this District.

## PARTIES

15. Plaintiff is a resident of Nebraska.

16. BYBN is a Nebraska for profit corporation with its principal place of business in Lincoln, Nebraska.  Its registered agent is Michael M. Hupp, Suite 800, 1125 South 103rd Street, Omaha, Nebraska, 68124.

17. BYBI is a Tennessee for profit corporation with its principal place of business in Memphis, Tennessee.  It may be served at 1657 North Shelby Oaks Drive, Suite 105, Memphis, Tennessee, 38134.

18. BYBN owns and together with BYBI operates a retail location at 8500 Andermatt Drive, Lincoln, Nebraska, 68506.

19. BYB is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

## FACTS

20. FACTA was enacted in 2003 and gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

21. 15 U.S.C. §1681c(g)(1), provides that:

> …no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

22. With respect to point of sale machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

23. With respect to point of sale machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 1, 2006.

24. In May 2007, the Federal Trade Commission issued a business alert informing businesses that they, "must delete the [credit and debit] card's expiration date." FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information in Receipts.

25. On June 3, 2008, President George W. Bush signed The Credit and Debit Card Receipt Clarification Act (Clarification Act), which amended the Fair and Accurate Credit Transactions Act (FACTA). The Clarification Act provides that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise

complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt."

26. Visa has explicitly instructed merchants, like BYB, that the debit or credit card expiration date must be truncated.

27. MasterCard has explicitly instructed merchants, like BYB, that it must omit the card expiration date.

28. American Express has notified merchants, like BYB, that under FACTA its customer receipts must not print the expiration date.

29. Visa, MasterCard, and American Express by contract require BYB to be FACTA compliant.

30. BYB accepts Visa, MasterCard credit and debit cards and American Express credit cards in the course of transacting business with persons who make purchases at BYB's location in Lincoln, Nebraska.

31. In transacting its business, BYB uses one or more cash registers and/or other machines or devices that electronically print receipts for credit card and debit card transactions.

32. Plaintiff has a bank issued Visa card as defined under 15 U.S.C. §1681a.

33. Since March 19, 2011, on more than one occasion, Plaintiff's Visa card was used to make a purchase at BYB's location located at 8500 Andermatt Drive, Lincoln, Nebraska, 68506.

34. Each time since March 19, 2011, when Plaintiff's Visa card was used to make a purchase at BYB, 8500 Andermatt Drive, Lincoln, Nebraska, 68506, he was given a computer-generated cash register receipt displaying the expiration date of his Visa card along with the last four digits of his debit card account.

35. Each receipt provided Plaintiff was labeled "customer copy."

36. Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale. The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc. In isolation, the publication of **only** the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

37. The publication of expiration dates on customer receipts disseminated at the point of sale, **in addition to** the last four or five digits of the customer account number, exponentially increases the possibility of identity theft, which is the obvious reason that the credit card companies and Congress require the truncation of expiration dates. The expiration dates are used to confirm that a person making a purchase over the phone or on the internet actually has the card in their possession.

38. Banks and credit card associations (i.e. Visa, MasterCard, American Express, etc.) are keenly aware of the importance of truncating expiration dates.

39. In addition, a would be identity thief who steals a receipt containing the last four or five digits of a credit card account number and an expiration date can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

40. The costs of truncating credit and/or expiration dates and account number is minimal.

41. Most of BYB's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. BYB could readily have done the same.

42. BYB willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA after June 3, 2008.

## BYBI'S ROLE IN THE UNLAWFUL CONDUCT

43. BYBI is a franchisor of BYBN which is one of its franchisees.

44. BYBI exercises significant actual control over the business activities of BYBN, particularly with respect to those involving point of sale processes, policies and procedures.

45. That BYBI is directly involved in and controls the day-to-day operation of BYBN is evidenced in the Franchise Disclosure Agreement ("FDA") published and disseminated by BYBI most recently on April 30, 2010.

46. Among other things, the FDA prescribes a "System" under which BYBI's restaurants must operate.

47. The FDA provides that the System includes:

> Distinctive building designs, interior and exterior layouts, trade dress, equipment layout standards and specifications, development and maintenance of sources of supply, standardized menus, operating procedures for sanitation and maintenance, food and beverage storage procedures, food preparation procedures, service procedures, secret food preparation recipes and mixes, standards and specifications of equipment, equipment layouts, products, operating procedures, training and management programs and other prescribed standards of operation and requirements as we may designate. We will provide new information and techniques to you by means of the Manuals, or by other means as we deem appropriate.

48. The FDA also provides that BYBN "must purchase only the products that meet our specifications and standards" and BYBI "reserve[s] the right to designate a single distributor

or supplier for any product, service equipment, supply or material…. All approved products and ingredients must conform to specifications as we may designate." Finally, the FDA provides that BYBN "may not install or allow installation of improvements, furnishings, signs or equipment for which we did not give our prior written approval, and any non-conforming item or items installed without our permission must be removed upon our demand."

49. With regard to Point of Sale systems, the FDA provides:

> We require that you use a point of sale system (the "POS System") which meets our specifications and which may include telecommunication devices…. All franchisees will be required to upgrade or update all POS Systems during the term of the franchise at our request…. All new franchise Restaurants will be required to purchase software and hardware maintenance programs that supply updating, upgrading and support functions from Aloha/Radiant…. We will have no contractual limitations on our right to access and report the information maintained or generated in any electronic cash register or computer system used at or for the Restaurant business.

50. That BYBN was subject to the control of BYBI is further evidenced by the terms of the franchise agreement appended to the FDA to which, upon information and belief, BYBN and BYBI were parties.

51. For example, the franchise agreement provides that BYBI will conduct periodic inspections and audits of BYBN which will include evaluations, inspections, mystery shopping and customer surveys of BYBN's products and services.

52. In a section titled "Control of System" the franchise agreement provides further that BYBI "will control and establish requirements for all aspects of the System."

53. Finally, the franchise agreement provides that BYBI has the right to specify for use only those point of sale systems or cash register systems that are acceptable to it.

54. It is clear that BYBI exercised actual and substantial control over the activities of BYBN that gave rise to the violations of FACTA. However, even if BYBI did not exercise actual control over BYBN's activities, BYBN had apparent authority to act on its behalf.

55. Patrons of BYB were entitled to reasonably rely upon the belief that a large national chain of restaurants would take all reasonable steps to protect it from the risk of identity theft and otherwise comply with clear federal statutes governing credit card use.

56. BYBI held out BYBN as its agent to act on its behalf at least insofar as the point of sale transaction was concerned.

57. This is evidenced by among other things, the fact that BYBN's signage, cash register receipts, menus and other advertising media all bore the Back Yard Burgers mark.

58. In addition, if a customer or prospective customer were to search for information about "Back Yard Burgers" on the internet, the prospective customer would be directed to a web page maintained by BYBI or one of its subsidiaries at "www.backyardburgers.com."

59. If that same customer were to conduct a search on the Back Yard Burgers site for BYBN in Lincoln, Nebraska, the customer would be directed to a map of BYBN in Lincoln. At least that part of the website contains no indication that BYBN is anything but part of BYBI.

60. Next to BYBN's Lincoln address is a "contact us" link. By clicking on this link, a visitor to the site can send an e-mail with a question or concern. The link does not lead to BYBN but to BYBI. Clicking on the "contact us" link on the BYBN page transfers the visitor to a page containing the following information:

> **Back Yard Burgers Corporate Office**
> 500 Church Street, Suite 200
> Nashville, TN USA 37219
> P (615) 620-2300 | F (615) 620-2301

61. BYBI clothed BYBN with the authority to act on its behalf at least with respect to matters relevant to financial transactions with its customers.

62. BYBI knew that BYBN was using its mark and otherwise acting on its behalf in dealing with its customers. BYBI held BYBN out to the public as its agent.

63. At least for the purposes of operating the computer or point of sale systems that resulted in printing the unlawful receipts at issue, BYBN was at all times acting as BYBI's agent for purposes of liability under FACTA.

## VIOLATION ALLEGED

64. BYB violated 15 U.S.C. §1681c(g)(1), which provides that:

> …no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number **or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction**.

> 15 U.S.C. §1681c(g)(1) (emphasis added).

65. The FCRA, 15 U.S.C. §1681n, provides:

> §1681n. Civil Liability for willful noncompliance
> (a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of - (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; ***

> (2) such amount of punitive damages as the court may allow; and

> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court…

66. BYB either knew of and ignored its legal duty to truncate the expiration date from debit card and credit card purchases that it accepted from Plaintiff and the class members at the point of sale or alternatively, BYB failed to inquire at all about its duty to truncate as required by the statute.

67. The FCRA, 15 U.S.C. §1681p, provides:

> §1681p. Jurisdiction of courts; limitation of actions

> An action to enforce any liability created under this title [15 U.S.C. §1681 et seq.] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of –

>     (1) 2 years after the date of discovery by plaintiff of the violation that is the basis for such liability; or
>
>     (2) 5 years after the date on which the violation that is the basis for such liability occurs.

## CLASS ALLEGATIONS OF THE VIOLATION ALLEGED

68.     Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

69.     The class is defined as all persons who used either a Visa or MasterCard debit or credit card, or American Express credit card at BYB's business located at 8500 Andermatt Drive, Lincoln, Nebraska, 68506, where BYB provided an electronically printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card for a time period beginning June 4, 2008 until the date of the filing of this lawsuit.

70.     The class is so numerous that joinder of all individual members in one action would be impracticable.

71.     There are well over 100 persons who used either a Visa or MasterCard debit or credit card, or American Express credit card at BYB's business located at 8500 Andermatt Drive, Lincoln, Nebraska, 68506, where BYB provided an electronically printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card for a time period beginning June 4, 2008 until the date of the filing of this lawsuit.

72.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal theories and arise from the same unlawful and willful conduct.

73.     There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

      a. Whether BYB had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

      b. Whether BYB thereby violated FACTA; and

      c. Whether BYB's conduct was willful.

74. Plaintiff will fairly and adequately represent the class members.

75. Plaintiff has no interests that conflict with the interests of the class members.

76. Plaintiff has retained experienced counsel in consumer class action matters.

77. A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

WHEREFORE, Plaintiff requests this Honorable Court to: 1) certify the class as described herein; and 2) enter judgment in favor of Plaintiff and the class members and against BYB for:

      a. Statutory damages of no less than $100 nor more than $1,000 per violation;

      b. Attorney's fees and costs; and

      c. For such other and further relief as the Court may deem proper including punitive damages.

## JURY TRIAL DEMAND

Plaintiff demands a jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Omaha, Nebraska, as the place of trial.

DATED this 26th day of May, 2011.

          BRADY KEITH, Individually and on behalf of a class, Plaintiff,

By:   s/ Joshua C. Dickinson
Joshua C. Dickinson, Bar Number 23700
Attorneys for Plaintiff
Spencer Fane Britt & Browne LLP
9420 Underwood Avenue, Suite 200
Omaha, NE 68114
Telephone: (402) 965-8600
Fax: (402) 965-8601
E-mail: jdickinson@spencerfane.com

Brian J. Christensen, MO Bar No. 53497
Shawn M. Ford, KS Bar No. 23286
Attorneys for Plaintiff
Spencer Fane Britt & Browne LLP
9401 Indian Creek Pkwy, Suite 700
Overland Park, Kansas 66210
(913) 345-8100
(913) 345-0736 (facsimile)
bchristensen@spencerfane.com
sford@spencerfane.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was filed electronically with the United States District Court for the District of Nebraska this 26th day of May, 2011, with notice of case activity generated and sent to all counsel of record.

          s/ Joshua C. Dickinson
          Attorney for Plaintiff