**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| BRADY KEITH, | ) | |
| Individually and on behalf of a class, | ) | Case No. 8:11-CV-00135 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT** |
| | ) | **OF UNOPPOSED MOTION** |
| | ) | **FOR CONDITIONAL CLASS** |
| BACK YARD BURGERS OF | ) | **CERTIFICATION, APPOINTMENT** |
| NEBRASKA, INC. | ) | **OF CLASS REPRESENTATIVE,** |
| | ) | **APPOINTMENT OF CLASS COUNSEL,** |
| Defendant | ) | **PRELIMINARY APPROVAL OF** |
| | ) | **CLASS SETTLEMENT AND NOTICE** |
| | ) | **TO CLASS AND SETTING OF FINAL** |
| | ) | **APPROVAL HEARING** |
| | ) | |

Plaintiff Brady Keith ("Plaintiff"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby respectfully requests an Order: conditionally certifying the Settlement Class, appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, preliminarily approving the proposed Settlement, approving notice to the Class, and setting a Final Approval Hearing.  In support of this Unopposed Motion, Plaintiff states as follows:

## BACKGROUND

In 2003, the Fair and Accurate Credit Transactions Act ("FACTA") was signed into law. The purpose of FACTA, an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), is to protect consumers from the devastating effects of identity theft and credit card and debit card fraud.  The Federal Trade Commission estimates that over 9 million people each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.  One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions.

Identity thieves who do this are known as "carders."  This modus operandi is more common than the use of sophisticated electronic means to obtain the information.  Robin Sidel, "Identity Theft – Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

> To thwart this pervasive technique and its devastating effects, FACTA provides that:
>
> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g).  Each of these "truncation" requirements provides a crucial barrier between an individual's financial identity and a would-be identity thief's predatory efforts to steal private financial information.  Accordingly, to incentivize compliance with this important provision, the statute subjects willful[1] violators of the Act to damage awards in an amount between $100 and $1,000 per violation.  *Id.* at § 1681n.

Plaintiff's First Amended Class Action Complaint, that was filed on May 26, 2011, alleges that Defendant willfully violated FACTA by failing to properly truncate the credit card and debit card expiration dates on electrically printed receipts provided to their customers.  Defendant Back Yard Burgers of Nebraska, Inc. ("BYBN") owns and operates a restaurant in Lincoln, Nebraska, and "accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.[2]  Defendant knew or should have known of FACTA's

---

[1]FACTA is a subsection of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*  Under FCRA, a "willful" violation is one that is reckless or knowing.  *Safeco Insurance Co. v. Burr*, 551 U.S. 47, 57 (2007).

[2] Plaintiff originally filed against both BYBN and Back Yard Burgers, Inc.  On October 17, 2012, Back Yard Burgers, Inc. filed for bankruptcy.  This case was stayed pending the bankruptcy proceedings. On November 20, 2012, the United States Bankruptcy Court for the District of Nebraska dismissed Defendant Back Yard Burgers, Inc. pursuant to Plaintiff's unopposed motion to dismiss. [Dkt 11; CASE NO. BK12-12882 (D. Del.) A12-8074-TJM

OP 651357.2

requirements but willfully ignored the statute and failed to bring their point of sale machines into compliance by June 3, 2008, thereby increasing the threat of identity theft for their customers.

Before the bankruptcy proceedings, the Parties engaged in discovery and also conducted mediation on three separate occasions, mediating the dispute once with Back Yard Burgers of Nebraska, Inc. and Plaintiff and once with Back Yard Burgers of Nebraska, Inc., Back Yard Burgers, Inc. and Plaintiff.  The Parties were unable to obtain a settlement at the first two mediations.  However, following the bankruptcy proceeding referenced above and the dismissal of Defendant Back Yard Burgers, Inc., the Parties again mediated the dispute and were able to obtain a settlement at the final mediation with Defendant Back Yard Burgers of Nebraska, Inc. Plaintiff now seeks the Court's preliminary approval of a class action Stipulation and Settlement Agreement (the "Settlement") resolving all claims against Defendant in this action and subject to final Court approval.

The Settlement was entered into at arms-length by experienced counsel, and only after extensive negotiations. The Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiff and the litigation risks of Plaintiff and Defendant. Plaintiff submits that the Settlement is sufficiently within the range of possible final approval and warrants an order from this Court granting preliminary approval and directing the provision of notice to Settlement Class Members.

## **ARGUMENT AND AUTHORITIES**

"Under Rule 23(e) a court must review any 'settlement, voluntary dismissal, or compromise' of the 'claims, issues, or defenses of a certified class.'" *Holling-Fry v. Coventry Health Care of Kansas, Inc.*, No. 07–0092–CV–W–DGK, 2011 WL 6180456, *1 (W.D. Mo.

---

8:11CV135.]  On October 16, 2013, this Court ordered that the case should proceed against Defendant Back Yard Burgers of Nebraska, Inc.

OP 651357.2

2011) (quoting Fed.R.Civ.P. 23(e)). "The court is responsible for determining that the settlement terms are fair, adequate, and reasonable, and must act as a fiduciary, 'serving as a guardian of the rights of absent class members.'" *Id.* (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005)). "A district court must consider four factors in determining whether a settlement is fair, adequate, and reasonable: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* "The most important consideration is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* (quotations omitted). *See also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999). "Ultimately, the court must determine whether the interests of the class are better served by settlement than by further litigation." *Id.* (citing *In re Wireless*, 396 F.3d at 932).

With this Motion, Plaintiff requests that the Court preliminarily approve the Settlement, certify the Settlement Class for purposes of obtaining approval of the Settlement and providing notice, and appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel. For purposes of settlement only, Defendant does not oppose Plaintiff's Motion.

## I.   THE STANDARD FOR CLASS CERTIFICATION IS MET.

Plaintiff respectfully asks this Court to grant class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

> All persons in the United States who used a Visa or MasterCard, or Discover debit or credit card or American Express credit card at any of Defendant's currently owned retail locations where the person was provided an electronically printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card during the period beginning November 3, 2010 through April 15, 2011 (the "Class Period").

OP 651357.2

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Additionally, courts have added two additional "implicit" requirements to the certification analysis. *See In re Teflon Products Liability Litigation*, 254 F.R.D. 354, 360 (S.D. Iowa 2008). This Court should certify the Class because all implicit and explicit requirements of Rule 23 are satisfied in this case. *See* Fed.R.Civ.P. 23.

### A.    The Requirements of Rule 23(a) Are Satisfied.

Pursuant to Rule 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). Each of these requirements is satisfied.

### 1.    The Class is Numerous

Under Rule 23(a)(1), the Court must determine that the proposed class is so numerous that "joinder of all members is impracticable." *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). The number of persons in the proposed class is the most obvious factor relevant to this determination. *Id.* There is no bright-line number of class members required, nor does an exact number need to be established. *Id.*; *see also Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 506 (E.D. Ark. 2009) (plaintiffs need not provide identity of class members to establish numerosity).

Additionally, "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." *Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479, 484 (N.D.

Iowa 2008).  It has consistently been held that joinder is impracticable where the class is composed of more than 40 persons.  Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.05 (4th ed. 2002).

Other factors relevant to the numerosity determination include "the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members."  *Paxton*, 688 F.2d at 559-60 (citing C. Wright & A. Miller, Federal Practice and Procedure § 1762).

In this case, numerosity of the class is established. Specifically, between November 3, 2010 and April 15, 2011, BYBN averaged approximately 3,102 debit/credit card transactions per month. Using this number to calculate the number of transactions during the Class Period, BYBN had approximately 17,000 credit or debit card transactions. *See* Index of Evidence at Exhibit A, BYBN's Answers and Objections to Plaintiff's First Interrogatories, No. 7.  The sheer number of transactions in violation of the statute establishes that the number of class members is far beyond the number deemed sufficient in other cases.  *See Keller v. Macon County Greyhound Park, Inc.*, No. 3:07-CV-1098-WKW, 2011 WL 1085976, at *5 (M.D. Ala. 2011). *See also Arkansas Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 756–66 (8th Cir. 1971) (approving class of twenty members); *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) (certifying class of twenty to sixty-five members).

It simply would not be practicable to join all the Class members in this litigation. Additionally, it would be extremely inconvenient and wasteful to try each case separately where there are thousands of class members who would all rely on exactly the same evidence – the nonconforming receipt supplied by Defendants and Defendants' state of mind in failing to

comply with FACTA. Accordingly, the number of consumers receiving a non-compliant credit card and/or debit card receipt from Defendants meets the numerosity requirement of Rule 23(a).

It would not be practicable to join all the Class Members in this litigation. Further, thousands of separate trials would be wasteful when each case turns on the same evidence – a nonconforming receipt and Defendants' state of mind in providing it. Accordingly, the numerosity requirement of Rule 23(a) is met.

### 2.      The Commonality Requirement is Satisfied.

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." "This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in a class action." *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488, 492 (S.D. Iowa 2008); *In re Aquila Erisa Litigation*, 237 F.R.D. 202, 207 (W.D. Mo. 2006) (citing *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Commonality is satisfied if the 'question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Ruppert*, 252 F.R.D. at 492 (quoting *Bublitz v. E.I. duPont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982)); *In re Aquila ERISA Litig.*, 237 F.R.D. at 209 (stating that the "appropriate focus" in determining commonality is on the "conduct of the defendants, not the plaintiffs"); *Dukes*, 131 S.Ct. at 2551 (claims must depend upon a common contention that is capable of classwide resolution).

In this case, Plaintiff and the Class share nearly identical questions of law and fact: 1) whether Defendant had a practice of providing printed sales receipts displaying the expiration date of the credit/debit card and whether Defendant provided such receipts to Plaintiff and the members of the Class; 2) whether Defendant's conduct violated FACTA; 3) whether Defendant's

conduct was willful; 4) whether Plaintiff and members of the Class are entitled to statutory damages, punitive damages, costs, and/or attorneys' fees for Defendant's conduct; and 5) the applicability of any defenses.  Accordingly, the commonality requirement is satisfied.

### 3.     Plaintiff's claims are "typical."

Rule 23(a)(3) requires that proposed class representatives have claims "typical" of other class members.   "The typicality requirement is met if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory."  *Ruppert*, 252 F.R.D. at 492 (internal quotations omitted); *see also Paxton*, 688 F.2d at 561-62. "Typicality requires a demonstration that the members of the class have the same or similar grievances as the named plaintiff." *Id.* (internal quotations omitted); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ("[F]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.").

Plaintiff's claims against Defendant are identical to those of the Class.  Plaintiff alleges that Defendants violated FACTA by providing him, and each member of the proposed Class, with a receipt containing the expiration date of the credit or debit card.  Further, Plaintiff seeks exactly the same statutory damages that each member of the Class would likewise seek.  Plaintiff and each member of the Class were subjected to the same unlawful conduct by Defendant. Each Class Member's basis for recovery is premised on the same legal theory.   Accordingly, Plaintiff's claims are typical of every Class member. *See Beringer*, 2008 WL 4390626, at *2 (requirement of typicality "easily satisfied" in FACTA class action).

OP 651357.2

### 4.     Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

The putative class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   This rule has two subparts: "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Gardner v. Equifax Info. Servs., LLC*, No. 06-CV-3102, 2007 WL 2261688, at *4 (D. Minn. Aug. 6, 2007) (quoting *Amchem Prods., Inc.*, 521 U.S. at 625).

Plaintiff satisfies both prongs of this requirement.   As discussed above, Plaintiff's claims are identical with other members of the class.   Because Plaintiff's claims are identical to the Class, there is no potential for conflicting interests in this case.   Additionally, Plaintiff will capably fulfill the duties required of a Class representative.   Moreover, Plaintiff has retained qualified and experienced attorneys who are competent in class action litigation, and FACTA class action litigation in particular.   Plaintiff's counsel has and will continue to vigorously prosecute this action on behalf of Plaintiff's and the Class as a whole.   Accordingly, because Plaintiff and his counsel will adequately and effectively represent and promote the interests of the Class, the requirements of Rule 23(a)(4) are satisfied.

### B.     The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to Rule 23(a)'s class certification requirements, a proposed class must satisfy one of the three alternative requirements of Rule 23(b).   Fed. R. Civ. P. 23(b). Plaintiff seeks certification pursuant to Rule 23(b)(3), which authorizes certification when:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

OP 651357.2

class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). Both conditions of Rule 23(b)(3) are satisfied in this case.

### a.  Common Questions of Both Law and Fact Predominate.

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Blades*, 400 F.3d at 566; *Amchem*, 521 U.S. at 623. "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Id.* The predominance requirement is satisfied if "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995).

Other district courts addressing class certification in similar FACTA cases have found that the predominance requirement of Rule 23(b)(3) is met. *See, e.g., Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290 (N.D. Ill. 2008) (common predominating issue was whether defendant "issued credit or debit card receipts bearing prohibited material"); *Beringer*, 2008 WL 4390626, *at 4 ("The conduct at issue here—namely, the creation of a computer-generated receipt—is completely standardized. Individual questions are thus nonexistent at the liability stage, and even the existence of many individual questions at the damages stage seems unlikely, given the more or less uniform injury suffered by class members."); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008) (stating that issue of whether defendant issued noncompliant receipts predominated over any issues related to whether some class members may have suffered actual harm); *Reynoso v. South County Concepts*, No. SACV07-373-JVS, 2007 WL 4592119, at *4 (C.D. Cal. 2007).

OP 651357.2

Common questions of both law and fact predominate in this case, specifically: whether Defendant provided improperly truncated printed sale receipts, whether this conduct violated FACTA, and whether Defendant's conduct was willful.[3]   The evidence necessary to answer these questions is standardized and will require establishing that it was Defendant's practice to provide such receipts and Defendant's state of mind in doing so.  Likewise, any defenses raised by Defendant would be applicable to all Class members as well. The predominance requirement is satisfied in this case.

### b.      A Class Action is Superior to Other Means of Adjudication.

Rule 23(b)(3) requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Four factors are relevant to this analysis:

(A)      the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)      the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). These factors strongly weigh in favor of class certification.

Individual members of the Class have little interest in controlling the prosecution of a separate action.  First, most members of the Class are likely not even aware of the fact that Defendant's conduct placed them at greater risk of identity theft, or that they have rights under FACTA. In any event, many members would likely choose not to pursue their claims individually because the "potential recovery is slight compared to the cost of litigation."

---

[3] For purposes of FACTA, "willful" is defined as either a knowing or reckless violation of the statute.  *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 56-60 (2007).

OP 651357.2

*Hammer*, 267 F.R.D. at 290.  While the statute permits the recovery of attorneys' fees and costs, the statutory damages range only between $100 and $1,000. 15 U.S.C. § 1681n. Such recovery is relatively meager compared to the time and effort necessary to litigate such a claim. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).  Thus, in the absence of a class action, members of the class could be deprived of any legal redress. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Beringer*, 2008 WL 4390626, at *6 ("Denying class certification here would therefore make it more likely that the federal interest Congress intended to vindicate in FACTA would go unaddressed.").  Accordingly, courts have endorsed class treatment in such circumstances, stating:

> [T]he proposed class consists of people who, because of the size of their claims, would be without effective strength to bring their opponents into court at all.  The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 616-17 (D.S.D. 2004) (internal citations omitted); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). *See also Redmon*, 249 F.R.D. at 296 (Rule 23(b)(3) superiority recognized because "potential recovery is too slight to support individual suits, but injury is substantial in the aggregate"); *Reynoso*, 2007 WL 4592119, at *6 ("The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action.").

Additionally, there is no litigation currently pending involving similar claims against Defendant.  Furthermore, resolving these claims on a class-wide basis in a single forum is efficient and cost-effective. *See Bird Hotel Corp. v. Super 8 Motels, Inc.*, 246 F.R.D. 603, 608

OP 651357.2

(D.S.D. 2007); *Halperin v. Interpark, Inc.*, No. 07-CV-2161, 2007 WL 4219419, at *4 (N.D. Ill. 2007); *Beringer*, 2008 WL 4390626, at *6 ("Proceeding as a class action for all the individuals who have a claim under FACTA against Defendant for what was printed on their receipts presents substantial efficiency gains, making a class action superior to the alternative of separate individual suits.").   As Defendant's restaurant is located in the District of Nebraska, most of the members of the Class are likely located near or within this District.  Further, each of Defendant's violations of FACTA occurred herein.  Accordingly, concentrating litigation of all the claims in this Court, in one action, is desirable.

Finally, there are no manageability issues that would preclude certification, even though the proposed Class includes thousands of individuals.  Rather, the large potential class further supports the superiority of a class mechanism. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004) (stating that a large class size is "no argument at all" against certification—"[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation."). *See also Redmon*, 249 F.R.D. at 296 ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all."); *Halperin*, 2007 WL 4219419, at *1 (FACTA class action certified where "over 900,000 qualifying receipts may have been printed").  Moreover, "[b]ecause the class sought to be certified is for settlement purposes only, the Court need not concern itself with questions of manageability that would arise were this action to proceed in litigation."  *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 675 (S.D. Iowa 2009); *see also Hanlon v. Palace Entertainment Holdings, LLC*, No. 11–987, 2012 WL 27461, *4-5 (W.D. Pa. 2012) (class action settlement does not raise due process issue of large damage award).

OP 651357.2

Accordingly, and for the purposes of settlement, Defendant does not dispute that the Settlement Class should be certified.

**c.      The Implicit Requirements are Met.**

In addition to the explicit requirements stated in Rule 23, many courts also have recognized two "implicit" requirements: "1) that the class definition is drafted to ensure that membership is capable of ascertainment under some objective standard; and 2) that all class representatives are in fact members of the proposed class." *In re Teflon Products Liability Litigation*, 254 F.R.D. at 360 (internal quotations omitted).  The Settlement Agreement defines the Class in terms that make the class members objectively identifiable – those individuals to whom a Defendant provided or facilitated the provision of an electronically printed receipt, in a transaction occurring on or after November 3, 2010 through April 15, 2011, on which Defendant printed the expiration date of the individual's credit card or debit card.  This definition provides an objective basis for ascertaining an individual's status as a class member.  Indeed, numerous courts have certified FACTA class actions using similar class definitions. *See, e.g., Hammer v. JP's Southwestern Foods, L.L.C.*, 267 F.R.D. 284 (W.D. Mo. 2010); *Beringer v. Standard Parking Corp.*, Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. 2008); *Troy v. Red Lantern Inn, Inc.*, No. 07-C-2418, 2007 WL 4293014 (N.D. Ill. 2007); *see also Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010).

Additionally, Plaintiff is in fact a member of the proposed class: Defendant BYBN provided him an electronically printed receipt in a transaction occurring after November 3, 2010 on which Defendant printed the expiration date of his credit card. Accordingly, the implicit prerequisites to class certification are met. Because the explicit and implicit requirements of Rule 23(a) and (b)(3) are satisfied, this Court should certify the Settlement Class.

## II.     CLASS COUNSEL SHOULD BE APPOINTED.

Pursuant to Rule 23(g) class counsel must "fairly and adequately represent the interests of the class."  *In re Aquila ERISA Litig.*, 237 F.R.D. at 213.  To make this determination, courts must evaluate the following:

> [T]he work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsel's knowledge in the applicable law, and the resources counsel will commit to representing the class.

*Id.* at 213-14; Fed. R. Civ. P. 23(g).

Plaintiff's counsel has performed extensive research and investigation as part of the filing and litigating of the Plaintiff's claims, and has actively litigated the case since its inception, conducted discovery with both BYBN and Back Yard Burgers, Inc. including resisting a motion for judgment on the pleadings filed by Defendants, which was denied by this Court.  Plaintiff's counsel then conducted a mediation with both BYBN and Back Yard Burgers, Inc., which was unsuccessful.   Following the mediation, Back Yard Burgers, Inc. declared for bankruptcy resulting in a stay of the case. Plaintiff's counsel worked with the Bankruptcy Court to dismiss Back Yard Burgers, Inc. from this matter and then proceeded with the successful efforts to resolve the dispute with BYBN through continued use of the original mediator.

Further, Plaintiff's counsel is currently handling several class actions asserting similar violations of FACTA, and is constantly monitoring the legal landscape of these types of actions. Additionally, Plaintiff's counsel has substantial broad-based multi-jurisdictional experience in other types of complex litigation as well.[4]   Plaintiff's counsel has committed significant resources to the vigorous and aggressive prosecution of this matter to promote the interests of

---

[4] The Court's attention is respectfully referred to proposed Class Counsels' complex and class action litigation experience sheet, included in the *See* Index of Evidence at Exhibit C.

OP 651357.2

Plaintiff and the putative class members.  Plaintiff's counsel is willing and prepared to provide additional information on these qualifications if so requested by this Court.

## III.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

"A district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).  "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id.* at 933 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999)).

### A.    The Settlement Terms are Reasonable.

The proposed Settlement is fair, reasonable and adequate. In exchange for the release of Plaintiff's and the Settlement Class's claims, Defendant will provide one coupon for a free soft drink with the purchase of an entrée to any Class Member that submits a valid claim form. *See* Settlement Agreement, Ex. B.  These coupons shall only be redeemable on a subsequent visit to the restaurant, shall be transferable, stackable with any other discounts or coupons, and shall be valid for 6 months from the beginning of the distribution period.  *See* Settlement Agreement, Ex. B.  In addition, through this lawsuit, Plaintiff has already achieved a benefit to the class and the public at large by immediately notifying Defendant of its violations of FACTA and ensuring compliance with same.

Further, Defendant has agreed to the entry of a Consent Judgment against Defendant and in favor of the Settlement Class in the amount of $2,792,400 ("the Consent Judgment").  As part of this Consent Judgment, Defendant is assigning its claims against Data Cash Register ("DCR")

OP 651357.2

for their actions that resulted in the Defendant's FACTA violations. *See* Settlement Agreement, Ex. B. In particular, BYBN has agreed to fully and unconditionally quitclaim assign to the Settlement Class any claim it may have against DCR based on or arising out of Plaintiff's and the Class members' claims against BYBN, including but not limited to any claims it may have for contribution, indemnity, fraud, negligence, breach of contract, any statutory claims under federal, state or local law, and any other claims related in any way to BYBN's violations of FACTA as alleged by Plaintiff.

Plaintiff's Counsel is incentivized to pursue as much as possible of the Consent Judgment in order to establish this common fund for the Class Members. Plaintiff's counsel anticipates that its action against a non-party or non-parties from the assignment of Defendant's claim against DCR will involve significant and expensive litigation. Plaintiff's counsel will pursue these claims at its own expense until all efforts have been exhausted to recover on the Consent Judgment and fill the common fund.

After reasonable efforts have been exhausted by Plaintiff's counsel to collect on the Consent Judgment, first against only DCR, and then, in the event BYBN meets the specific financial benchmarks for collection efforts, to proceed against BYBN, then Class Members who submit a valid claim will be provided a cash payment from any funds that are obtained from this Consent Judgment in the following manner:

    a.    If the amount collected is equal to or greater than $150 times the number of transactions for which Valid Claims are submitted:

        i.    Class members who filed claims shall receive $90 per transaction for which they filed a valid claim.

        ii.    Class Counsel shall receive any remaining funds, up to the amount of the fee and expense award in the Consent Judgment (up to 40 percent of the Consent Judgment ($1,116,960)).

      iii.     Any funds still remaining shall be donated to charity approved by the court.

      b.     If the amount collected is less than $150 times the number of transactions for which claims were filed:

      i.     Class members who filed claims shall receive 60% of the total remaining amount collected, pro rata according to the total number of transactions for which claims were filed.

      ii.     Class Counsel shall receive 40% of the total amount collected in satisfaction of the fee and expense award in the Consent Judgment.

Additional value is created through Defendant's agreement to fund notice and administration. *See* Settlement Agreement at ¶ 2.8.  The cost of administration will not reduce the compensation available to the Settlement Class.

Finally, further benefit has already been achieved on behalf of the class and to the public at large in that the filing of this lawsuit compelled BYB to immediately review its point of sale credit card procedures and bring its system in accord with the requirements Congress set forth in FACTA.

Based on the relief available to the Class at this juncture of the proceeding, the fact that Plaintiff's counsel will seek claims against a non-party to recover the consent judgment, and that Plaintiff's request for attorneys' fees will be tied to the amount it is able to recover for the Class, Plaintiff requests that this Court enter an order preliminarily approving the Settlement Agreement (*See* Index of Evidence at Exhibit B).

## B.    The Settlement Benefits Merit Approval

The settlement value available for the Settlement Class is a good result in light of Defendants' financial condition and what Plaintiff and the Class could achieve if they were to proceed to trial.

OP 651357.2

Litigation presents risks to the Class. For Plaintiff and the Class to prevail at trial, they would have to prove that Defendant's conduct in providing the non-compliant receipts was "willful" within the meaning of Section 1681n of the FCRA.  If willfulness were proven, each Class Member would be entitled to a damage award between $100 and $1,000 and the possibility of punitive damages.  *See* 15 U.S.C.A. § 1681n.  While such a recovery would likely surpass the value created in the proposed settlement, it would also require Plaintiff and the Class to overcome the hurdle of establishing willfulness.  And while Plaintiff believes he has a good case for a willfulness finding, Defendant vigorously disputes that their alleged conduct was willful under the facts of this case and will defend against such a finding.  Thus, there is a question whether a jury would find willful, as opposed to negligent, conduct.[5]

Even if willfulness were proven, there is a question of whether a statutory (and possibly punitive) damage award of such a magnitude (up to $1000 for each transaction) would be collectible by the class.

Finally, even if Plaintiff prevailed on every factual and legal issue before this Court, an appeal, and the costs attendant thereto, would follow. Thus, the value of immediate recovery greatly exceeds the possibility of future recovery months or (likely) years from now.  Finally, prior to the Court's final approval, Class Members will have an opportunity to voice any objections to the Settlement Agreement or to request exclusion from the Settlement Class.

---

[5] A showing of negligent conduct only entitles a plaintiff to underlined actual damages and attorneys' fees.  15 U.S.C.A. § 1681o.  Plaintiff has not pled a cause of action for actual damages, thus any finding of negligent conduct on the part of the Defendants will result in no benefit to the Class.

OP 651357.2

IV.     **THE CLASS NOTICE PLAN IS APPROPRIATE**

Federal Rule of Civil Procedure 23(c)(2) requires the Court to direct to class members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2).

Likewise, the Due Process Clause of the United States Constitution guarantees class members the right to notice of class certification or settlement, *see* U.S. Const., amend. V; *Dejulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005); however, "[t]his due process right does not require actual notice to each party intended to be bound by adjudication of a class action." *See In re Motor Fuel Temperature Sales Practices Litigation*, 258 F.R.D. 671, 676 (D. Kan. 2009) (citing *Dejulius*, 429 F.3d at 944). *See also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950) ("A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified."); *State of W. Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090 (2d Cir. 1971) (holding publication alone constituted the best notice practicable).

In this case, Defendant does not maintain individual contact information for Class Members, thus, the Parties cannot reasonably provide notice directly to each individual Class Member.  Therefore, the Parties submit that the "best notice practicable under the circumstances" is to post notice in BYBN's restaurant for a period of 60 days during the Redemption Period (which will begin no later than 21 days following entry of the Consent Judgment), to publish once a week during the first two weeks of the 60-day Redemption Period in the local Lincoln, Nebraska paper, The Daily Reporter, and to post notice on a website that will be established for the 60-day Redemption Period.  *See In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1098 (5th Cir. 1977) ("type of notice to which a member of a class is entitled depends upon the information available to the parties about that person"); *Mirfasihi v. Fleet Mortg. Corp.*,

356 F.3d 781, 786 (7th Cir. 2004) (stating that when individual notice is not feasible, notice by publication in a newspaper is sufficient); *Hanlon v. Aramark Sports, LLC*, No. 09-465, 2010 WL 374765, *6 (W.D. Pa. 2010) (in FACTA case, publication in local newspaper and posting at defendant's retail location deemed sufficient).

The notice will state that individuals who are members of the Class may make a claim for coupons for a free soft drink with the purchase of an entrée to anyone who submits a valid claim for each transaction. A customer may submit claims for as many transactions it had with BYBN during the Relevant Period. These coupons shall only be redeemable on a subsequent visit to the restaurant, shall be transferable, stackable with any other discounts or coupons, and shall be valid for 6 months from the end of the Distribution Period. Further, the notice shall state that each Class Member may potentially receive a share of the Consent Judgment in the amount of up to $90 per transaction they engaged in at BYBN's restaurant during the Relevant Period with a credit or debit card, if funding is obtained as set forth in the Settlement Agreement.

The publication will be agreed to by the parties and will provide appropriate in-store notice. Additionally, Defendant's in-store notice will be substantially similar to what appears in the Publication Notice (attached to Settlement Agreement). Furthermore, Defendant's Claims Administrator will post a comprehensive notice (the "Website Notice") (attached to Settlement Agreement) on a website to be established by the Claims Administrator for a period of sixty (60) days. The Administrator will post the Full Legal Notice no later than twenty-one (21) days following the entry of the Preliminary Approval Order.

Thus, Plaintiff submits that the Notice plan as set-out in the Settlement Agreement constitutes the best notice practicable under the circumstances and fully comports with the notice

OP 651357.2

requirements of Rule 23 and the Due Process Clause.  Plaintiff respectfully requests that the proposed Notice be approved, and that the Court order the posting and publication of Notice.

## V.    ESTABLISHMENT OF A FINAL APPROVAL HEARING

The third step in the class action settlement process is the final approval hearing, at which time the Court may finally determine whether the proposed Settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). At the final approval hearing, proponents of the Settlement may explain and describe its terms and conditions and Class Members and/or their counsel may be heard in support of or in opposition to the Settlement.

## <u>CONCLUSION</u>

The law favors compromise and settlement of class action suits. *See Schering-Plough Corp. v. FTC*, 402 F.3d 1056 (11th Cir. 2005); 4 Newberg, *Class Actions* § 11.41 (citing cases); *see also New England Health Care Employees Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008). Plaintiff respectfully submits that this Settlement is fair, adequate and reasonable under the particular circumstances of this case, and should be preliminarily approved.

WHEREFORE, Plaintiff Brady Keith respectfully requests that the Court enter an Order conditionally certifying the Settlement Class, appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel, preliminarily approving the Settlement and notice to the Class, and setting a Final Approval Hearing and for such other relief the Court deems just and proper.

OP 651357.2

Respectfully submitted,

/s/  Joshua C. Dickinson
Joshua C. Dickinson, 23700
Bryant T. Lamer (admitted pro hac vice)
Spencer Fane Britt & Browne LLP
12925 West Dodge Road
Suite 107
Omaha, NE 68154
T: (402) 965-8600
F: (402) 965-8601
E-mail: jdickinson@spencerfane.com
E-mail: blamer@spencerfane.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This will certify that the foregoing was served, this 2nd day of July, 2014, via the Court's

CM/ECF system which will notify all counsel of record of its filing.

/s/  Joshua C. Dickinson
*Attorney for Plaintiffs*

23

OP 651357.2